ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Gregory Hewitt, Jose M. Salas, Jr., Charles W. Bell, Oxyonly, Inc. d/b/a Procair Inc., M.S.B., Inc., and Cardiorespiratory Home Systems<br><br>Plaintiffs,<br><br>v.<br><br>Michael O. Leavitt, Secretary of the Department of Health and Human Services, in his official capacity,<br><br>and<br><br>Leslie V. Norwalk, Acting Administrator of the Centers for Medicare and Medicaid Services, in her official capacity,<br><br>Defendants. | §§§§§§§§§§§§§§§§§§§§§§§ | <br><br>Case No. _____<br><br>3-07CV1038-K |

### PLAINTIFFS' ORIGINAL COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COME NOW Plaintiffs, Gregory H. Hewitt, Jose M. Salas, Jr., C.W. Bell, Oxyonly, Inc., d/b/a Procair Inc., M.S.B., Inc., and Cardiorespiratory Home Systems, and file this Complaint against Defendants, Michael O. Leavitt, Secretary of the Department of Health and Human Services, in his official capacity, and Leslie V. Norwalk, Acting Administrator of the Centers for Medicare and Medicaid Services, in her official capacity, and would respectfully show the Court the following:

## I. INTRODUCTION

1.  The mom-and-pop business is quickly becoming a thing of the past. The Wal-Marts of the world have the ability to operate with economies of scale and have other advantages that often result in the extinction of many of their small business competitors. While this offends the sensibilities of many Americans—for reasons both practical and nostalgic—it may be nothing more than the free market running its course.

2.  However, some consumers have needs that go beyond the mass-produced offerings of large-scale retailers. This is precisely the reason why many small home medical equipment providers were able to survive in this age of competitive price slashing, mergers and out-sourcing. The freedom of choice patients once had under Medicare allowed them to choose the home medical equipment providers that could best suit their needs. This created a heterogeneous marketplace with a variety of options for those in need of home medical equipment. Medicare beneficiaries knew the marketplace would ensure that they could find a supplier to meet and surpass their minimum medical needs. Providers, large and small, competed with each other for business based on the quality of service they provided and their relative attractiveness to patients and referral sources because of that quality service.

3.  Despite the ability of small home medical equipment businesses to survive in the existing marketplace, few will be able to survive Section 302 of the Medicare Prescription Drug, Improvement and Modernization Act of 2003 ("MMA" or the "Act"). This Act created a supposed competitive bidding scheme which will be used to determine which businesses are eligible to provide durable medical equipment to Medicare beneficiaries. The Act also contains a provision mandating that "[a]ccess of individuals to a choice of multiple suppliers in the area

[must be] maintained." However, this statement appears to be more aspirational than mandatory, and the scheme is designed in a way that it must eliminate existing providers.

4.      This access provision never offered much comfort, either to the patients who depend upon durable medical equipment from small companies or to the small, independent providers that depend on home medical equipment for their livelihood. Those patients dependent upon medical equipment from small durable medical equipment ("DME") providers feared that, despite this language of "choice," the true goal of Section 302 of the MMA was to eliminate the mom-and-pop operations and to simplify the industry by leaving only a few providers standing. Now that bids will soon be awarded in ten (10) major metropolitan markets, their fears have been realized. Medicare beneficiaries now face the reality that the care they require may not be available in MMA's mandated low bid DME regime.

5.      This unseemly result will naturally follow from the MMA's ill-conceived design. The bidding system is built to reward the characteristics of large DME providers by basing its ultimate decision on the bidder's ability: 1) to make the lowest bid, and 2) to service an entire metropolitan area. The per-unit expense, and thus the bid, of larger providers is almost necessarily lower than those companies that operate on a smaller scale. As if that is not enough, the requirement that the DME bidder must be able to cover the entire metropolitan area will clearly exclude smaller outfits.

6.      The lone recourse for small companies is to form a "network." The feasibility of small supplier networks acting as viable bidders is highly dubious, as the formation of such networks requires cooperation among disconnected, competing suppliers, with only vague government regulations as guideposts.

7. The competitive bidding scheme in Section 302 of the MMA was promoted under the auspices of decreasing fraud and lowering the expense of Medicare claims for DME. The reality is that the accreditation process and Medicare's already-existing ability to change reimbursement rates deal with these issues. Competitive bidding does nothing to promote the stated goals of the MMA, but it will be quite efficient in advancing its unstated goal of putting small DME businesses out of business. By the time bids are awarded in ten of the largest metropolitan areas in the United States, it will be too late. Small DME providers will effectively be shut out of many of their major markets. With the looming threat of expansion of competitive bidding to eighty (80) of the largest metropolitan areas in 2009, and the remainder of the United States after 2009, small providers will have little choice but to board up their doors.

8. The competitive acquisition scheme will also, out of unavoidable economic necessity, result in the Medicare Beneficiaries (in areas where it is implemented) receiving a different, lower level of product and/or service quality. An area of service constrained by an artificial bidding system which rewards bidders who reduce quality of service and product and punishes providers who demand a price sufficient to maintain acceptable and equal service levels to that previously provided (and still provided in not bid areas) is inherently unjust, unequal and unnecessary.

9. As a result, the competitive acquisition scheme poses an imminent threat of harm to those Medicare beneficiaries whose medical needs cannot be met by one-size-fits-all DME providers, including the beneficiary Plaintiffs in this lawsuit. This Act significantly diminishes Medicare's ability to meet the health needs of its beneficiaries, which runs counter to the most important purpose of the Medicare program.

## II. PARTIES

10.   Plaintiff, Gregory H. Hewitt is an individual who and resides in Dallas, Texas, in Dallas County.

11.   Plaintiff, Jose M. Salas, Jr., is an individual who resides in Arlington, Texas in Tarrant County.

12.   Plaintiff, Charles W. Bell is an individual who resides Fort Worth, Texas, in Tarrant County.

13.   Plaintiff, Oxyonly, Inc., d/b/a Procair Inc. is a Texas Corporation with its primary place of business in Dallas, Texas, in Dallas County.

14.   Plaintiff, M.S.B., Inc. is a Nevada Corporation with its primary place of business in Fort Worth, Texas, in Tarrant County.

15.   Plaintiff, Cardiorespiratory Home Systems, Inc., is a Texas Corporation with its primary place of business in Mabank, Texas, in Kaufman County.

16.   Defendant, Michael O. Leavitt, Secretary of the Department of Health and Human Services, may be served by any lawful means.

17.   Defendant, Leslie V. Norwalk, Acting Administrator of the Centers for Medicare and Medicaid Services, may be served by any lawful means.

## III. JURISDICTION AND VENUE

18.   There is Federal Question Jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action seeks to determine rights and remedies of the Plaintiffs under the Equal Protection and Due Process clauses of the United States Constitution. Jurisdiction is also proper under Sections 1343 (civil rights), 1367 (supplemental), 2201 (declaratory judgment), and 2202 (same), and 42

U.S.C. §§ 1983 and 1988 (civil rights). Further, Federal Question Jurisdiction is proper because agents of the United States Government acting in their official capacity, are the defendants.

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), because this is the judicial district where a substantial part of the events and omissions giving rise to this suit have occurred and will occur. Furthermore, some of the Plaintiffs reside in the district.

## IV. FACTUAL BACKGROUND

### A.  Medicare and the Home Medical Equipment Industry

20.     The DME industry and Medicare are inextricably linked, because Medicare beneficiaries are the largest single group of DME customers. Durable medical equipment suppliers provide their patients with medical equipment and supplies such as oxygen concentrators, hospital beds, wheelchairs, continuous positive airway pressure (CPAP) devices, ostomy bags, diabetic testing supplies, and enteral nutrition equipment and supplies. Elderly Americans are inherently more likely to require such care, and these same elderly Americans make up approximately 85% of Medicare beneficiaries. In fact, a 2004 Survey from the American Association of Homecare Providers indicated that payments from Medicare and Medicaid made up approximately 43% of all revenue for those DME providers surveyed.

### B.  The Provisions of Section 302 of the MMA

21.     Section 302 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, entitled, "Competitive acquisition of certain items and services" is codified at 42 U.S.C. § 1395w-3.

22. Section 302(a)(1)(A) of the MMA generally outlines the program to award contracts under the competitive acquisition scheme, determining which durable medical equipment suppliers will be chosen to supply items and services to Medicare beneficiaries.

23. The competitive acquisition scheme will soon be implemented in the in ten (10) recently selected metropolitan statistical areas. The statute precludes administrative and judicial review regarding all of the significant features of the competitive acquisition scheme.

24. As of April 2, 2007, the Centers for Medicare and Medicaid Services (CMS) announced the metropolitan statistical area where the initial bidding will be conducted. The areas are:

   a. Charlotte-Gastonia-Concord, North Carolina/South Carolina
   b. Cincinnati-Middletown, Ohio/Kentucky/Indiana
   c. Cleveland-Elyria-Mentor, Ohio
   d. Dallas-Fort Worth-Arlington, Texas
   e. Kansas City, Missouri/Kansas
   f. Miami-Fort Lauderdale-Miami Beach, Florida
   g. Orlando, Florida
   h. Pittsburgh, Pennsylvania
   i. Riverside-San Bernardino-Ontario, California
   j. San Juan-Caguas-Guaynabo, Puerto Rico

C. **Implementation of Section 302 of the MMA**

25. The winning bidders in the competitive acquisition scheme are the lowest bidders selected by the government that can provide and service a durable medical equipment item in the entire metropolitan statistical area in which the bidder has submitted a bid.

26. The government will calculate the median bid of the winning bidders and set that figure as the price the selected suppliers may legally charge Medicare beneficiaries for the item.

27.     Furthermore, making the system even more onerous for small DME providers, each bidder is required to bid all products in any category on which it wishes to place a bid.

28.     The two-pronged strategy to award bids to the lowest bidders that can cover the entire metropolitan statistical area created a naked preference for large durable medical equipment suppliers, as smaller suppliers lack the economies of scale to lower prices and the physical size to cover the whole of vast geographical regions.

29.     The competitive acquisition scheme has created a low-bid system in which the price of a product is the almost exclusive consideration used to determine which businesses may participate in Medicare.

30.     The only assurance offered to small suppliers is the "opportunity to be considered for participation in the program" under Section 302(b)(6)(D) of the MMA, a statement which failed to improve small suppliers' severe competitive disability caused by competitive acquisition. Thus, small suppliers are left with the almost unworkable option of forming networks of small suppliers to artificially create the economies of scale and geographical presence already enjoyed by larger competitors.

31.     Medicare beneficiaries, however, receive no assurance that the quality care they once enjoyed will continue. DME suppliers that win in the competitive acquisition phase may be unable to match the quality of the goods and services, or even meet the medically necessary minimum standards, provided by those suppliers the free market and Medicare beneficiaries had previously chosen.

32. The threat of harm to Medicare beneficiaries and DME providers is now imminent, as the CMS expects to announce winning bids in December of 2007.

33. The competitive acquisition scheme will leave two disparate classes in its wake. Medicare beneficiaries in the cities using the low bid system are left to sink or swim with the surviving DME suppliers whose sole virtue is their cheap product. In contrast, non-Medicare beneficiaries will find safe harbor in DME suppliers concerned with not only price, but quality and service. Thus, the favored class, non-Medicare beneficiaries, will receive all the care their medical conditions require, while Medicare beneficiaries are left to choose among the low-quality, generic products, regardless of their individualized healthcare needs.

**D.     The Plaintiffs**

34. Jose M. Salas, Jr., 32, has cerebral palsy and is a Medicare beneficiary. Mr. Salas is currently studying criminal justice at the University of Texas, Arlington. Mr. Salas purchases and will continue to purchase DME including a power wheelchair and related supplies and services. Mr. Salas puts many miles per day on his wheelchair.

35. Because of recent changes in reimbursement rates, Mr. Salas is on the brink of losing his ability to get the kind of wheelchair his needs require. However, due in large part to the individualized care, service, and maintenance from his small DME provider, Mr. Salas has been able to go to class, and will soon earn his bachelor's degree.

36. Gregory H. Hewitt, 39, is a C-5 quadriplegic and a Medicare beneficiary. Despite his quadriplegia, Mr. Hewitt provides a living for himself working in sales and in computer programming. Mr. Hewitt has purchased and will continue to purchase DME including a power wheelchair, catheters, and a variety of other equipment. Because of his complex needs, Mr.

Hewitt purchases his DME and related maintenance and services from a small medical equipment provider that does business in the Dallas-Ft. Worth area.

37. Mr. Hewitt requires relatively high-end equipment. As with Mr. Salas, recent changes in Medicare reimbursement rates have already diminished Mr. Hewitt's ability to use his Medicare benefits to purchase the kinds of medical equipment necessitated by his disability.

38. The competitive bidding scheme created by the MMA is structured to promote cheaper medical equipment without regard to the individualized needs of many Medicare beneficiaries.

39. Medicare beneficiaries like Mr. Salas and Mr. Hewitt are in imminent risk of harm because of the high likelihood that the small providers they rely upon will either not receive bids, or will be forced to supply durable medical equipment at such cut-rate prices that they will lose their ability to provide the kind of equipment and service required by individuals like Mr. Salas and Mr. Hewitt. Mr. Salas and Mr. Hewitt are both self-sufficient, productive members of society. Without the equipment, care, and service they need, these men may not be able to continue to remain self-sufficient.

40. Charles W. Bell, 75, has purchased DME including a power lift chair from his equipment provider in Fort Worth, Texas. Mr. Bell sleeps in his power lift chair because he has lower back and leg pains that make it difficult for him to sleep in a bed. Mr. Bell has benefited from the individualized attention and service he receives from his small medical equipment provider.

41. Oxyonly, Inc., d/b/a Procair Inc. ("Oxyonly"), is a small DME provider based out of Dallas, Texas. Oxyonly rents and sells oxygen equipment and related supplies and services, as

well as enteral nutrition and CPAP devices, and incontinence equipment. Oxyonly has six (6) employees and has been in business since 1991. A significant percentage of Oxyonly's revenue is from Medicare reimbursements. Like many small companies, superior service, and not merely low prices, is responsible for Oxyonly's longevity in the durable medical equipment marketplace.

42. Because of its small size and emphasis on service, Oxyonly will have a difficult or impossible time competing in the low-bid system. Even if Oxyonly is awarded a bid, they will be forced to provide medical equipment at prices that will likely be lower than they can afford.

43. M.S.B., Inc. ("M.S.B."), is a small, family-owned durable medical equipment company operating out of Fort Worth, Texas. M. S. B. sells and, to a limited extent rents out, a wide variety of durable medical equipment including enteral nutrition, ostomy bags, wheelchairs and other products. Approximately half of M.S.B.'s revenue is from Medicare reimbursements.

44. Because of its small size and emphasis on service, M.S.B. will have a difficult or impossible time competing in the low-bid system. Even if M.S.B. is awarded a bid, they will be forced to provide medical equipment at prices that will likely be lower than they can afford.

45. Cardiorespiratory Home Systems, Inc. ("CHS"), is a Texas Corporation with its primary place of business in Mabank, Texas. CHS sells and rents oxygen, oxygen equipment and related supplies and services. CHS is a small company with only five (5) employees that has been in business since 1992.

46. CHS provides oxygen equipment and supplies to customers in Kaufman, Henderson, Navarro, and Ellis Counties. Despite the fact that much of this service area is rural, these counties fall within metropolitan statistical area of Dallas-Fort Worth selected by CMS.

47.     Well over half of CHS's revenue is from Medicare reimbursements. Because of its small size and emphasis on service, CHS will have a difficult or impossible time competing in the low-bid system. Even if CHS is awarded a bid, they will be forced to provide medical equipment at prices that will likely be lower than they can afford. Additionally, the threat of competitive bidding is particularly onerous for CHS as a result of the fact that the MMA requires that a company be able cover the entire metropolitan area in order to submit a bid. CHS's business is directed at serving the more rural areas in Kaufman, Henderson, Navarro, and Ellis Counties that are largely ignored by companies based in large cities such as Dallas, Fort Worth, or Arlington.

## V. **CLAIMS FOR RELIEF**

### Claim 1 – Equal Protection

48.     Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs.

49.     Under the Equal Protection Clause of the United States Constitution, a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced will be treated alike.

**A.    Nature of the Regulatory Classification**

50.     In its implementation of Section 302 of the MMA, the government has created class legislation. The legislation discriminates against some, the Medicare beneficiaries and

small DME providers, including all of the Plaintiffs, and favors others, the non-Medicare patients and larger DME suppliers.

51.     The MMA thus creates a naked preference by preferring one over another on some basis other than individual merit.

**B.     Legitimacy of the Government Purpose**

52.     The competitive acquisition or competitive bidding provision of the MMA is a status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests.

**C.     Fit Between the Classification and Purpose**

53.     The state cannot rationally determine that by distinguishing among persons as it has, that the state could accomplish its legitimate purposes. The relation between the classifications adopted—Medicare beneficiaries and non-Medicare patients—and the objectives sought by the MMA are not rationally related.

54.     The relation between the classifications adopted—favoring large DME providers over smaller providers—and the objectives sought by the MMA are not rationally related.

55.     The low bid regime created by the MMA relegates Medicare beneficiaries to purchasing the cheapest products with the lowest accompanying level of service. Thus, the competitive acquisition scheme contradicts the underlying purpose of the entire Medicare program—to ensure that the weakest members of society receive quality medical care.

**Claim 2 – Due Process**

56.     Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs.

57.     The MMA bars administrative review. However, it is appropriate for the Plaintiffs to directly challenge the constitutionality of the statute in this Court.

58.     Medicare beneficiaries have a property interest in their benefit program under the Due Process Clause.

59.     The competitive acquisition scheme disregards the property interests of Medicare beneficiaries. Eliminating any real choice of providers, Medicare beneficiaries including the Plaintiffs are left only with the choice between low bidders which may or may not supply quality products and quality service which the disabled and elderly require.

60.     Medicare beneficiaries like Gregory Hewitt, Jose M. Salas, Jr., and Charles W. Bell have been denied the specialized care they require because of the operation of the competitive acquisition scheme, and have been denied their substantive due process rights. These Plaintiffs will suffer imminent harm and irreparable injury.

61.     Oxyonly, Inc. d/b/a Procair Inc., M.S.B., Inc. d/b/a C & B Medical, Inc., and Cardiorespiratory Home Systems have a property interest in providing their goods and services to Medicare beneficiaries. These Plaintiffs will suffer imminent harm and irreparable injury.

62.     The competitive acquisition scheme acts as a regulatory taking, thus Plaintiffs are entitled to just compensation. The competitive acquisition program has negatively impacted

Plaintiffs, has interfered with their distinct and reasonable investment-backed expectations, and the character of the government's scheme favors a finding of a regulatory taking.

63. There is no adequate remedy at law. For individuals such as Gregory Hewitt, Jose M. Salas, Jr. and C.W. Bell, the regulations imposed under the competitive acquisition scheme of Section 302 of the MMA imminently threaten their ability to receive adequate durable medical equipment and individualized service and care so as to remain self-sufficient. Oxyonly, M.S.B., CHS will suffer imminent and irreparable harm to their businesses. These damages cannot be calculated. Even if, arguendo, damages could be calculated, effective relief for the Plaintiffs and other DME suppliers and customers cannot be obtained without thousands of lawsuits similar to this one.

64. There is a substantial likelihood that Plaintiffs' case will succeed on the merits.

65. The injuries faced by the Plaintiffs outweigh any injury that would be sustained by the Defendants. Gregory Hewitt, Jose M. Salas, Jr. and C.W. Bell, will suffer imminent harm to their ability to receive adequate durable medical equipment and individualized service and care so as to remain self-sufficient. Oxyonly, M.S.B., CHS will suffer imminent and irreparable harm to their businesses. These injuries outweigh any injury that would be sustained but the Defendants as a result of the Court granting the injunctive relief requested herein.

66. The granting of an injunction would not adversely affect public policy or the public interest. Section 302 of the MMA is contrary to the public interest because it will drive small business out of the durable medical equipment market, reduce customers' ability to choose the durable medical equipment suppliers that can best meet their needs, and reduce the quality level of service and equipment within the durable medical equipment industry.

## VI. **REQUEST FOR RELIEF**

Accordingly, Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, and respectfully request that Defendant be cited to appear, and that upon hearing, Plaintiffs have the following relief:

1. A declaration by the Court that Section 302 of the MMA and the implementation of Section 302 of the MMA violate the Equal Protection Clause of the United States Constitution;

2. A declaration by the Court that Section 302 of the MMA and the implementation of Section 302 of the MMA violate the Due Process Clause of the United States Constitution;

3. A preliminary and permanent injunction ordering the Defendants, their agents, assigns, and all persons acting in concert or participating with them to:

   a. Cease the implementation of the competitive acquisition scheme under Section 302 of the MMA and award the Plaintiffs all appropriate injunctive relief; and

   b. Be enjoined from future implementation of such scheme.

4. To the extent that the Court determines there is a regulatory taking of a property interest held by DME suppliers and Medicare beneficiaries, the Plaintiffs request that the Defendants provide just compensation for the temporary regulatory taking that occurred from the time of the initiation of the competitive acquisition scheme to the date this Court grants injunctive relief;

5. Costs of suit;

6. All appropriate attorney's fees through the time of trial; and

7. Such other and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

Bradley W. Howard
State Bar No. 00786452
Robert C. Vartabedian
State Bar No. 24053534
BROWN & FORTUNATO, P.C.
905 South Fillmore, Suite 400 (79101)
P.O. Box 9418
Amarillo, TX 79105-9418
(806) 345-6300 Telephone
(806) 345-6363 Facsimile

By: _____
Bradley W. Howard

**ATTORNEYS FOR PLAINTIFFS**

\\server2\documents$\04\3127.001\VGM2Complaint3127001.doc

**JS 44** (Rev. 10/06)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
GREGORY HEWITT, et. al.

## DEFENDANTS
U.S. DEPT. OF HEALTH & HUMAN SERVICES
MICHAEL O. LEAVITT, SECRETARY, et. al.

**(b)** County of Residence of First Listed Plaintiff: DALLAS
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: ARLINGTON
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

RECEIVED JUN 12 2007 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Bradley W. Howard, Brown & Fortunato, P.C.
P.O. Box 9418, Amarillo, TX 79105-9418, (806) 345-5300

Attorneys (If Known)

**3-07CV1038-K**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |  ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  |  |
|  |  ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition |  |  |  |
|  | ☒ 440 Other Civil Rights |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Brief description of cause: 42 U.S.C §1395W-3 / DME providers/customers allege competitive acquisition violates US Const.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) PENDING OR CLOSED
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: June 11, 2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44a Reverse (Rev. 10/06)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**   Example:   U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference cases that are related to this filing, if any. **If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases.** A case is "related" to this filing if the case: (1) involves some or all of the same parties and is based on the same or similar claim; (2) involves the same property, transaction, or event; (3) involves substantially similar issues of law and fact; and/or (4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.